Robert L. ROGERS and Raymond Appleby, Plaintiffs,

v.

CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE and The International Brotherhood of Teamsters, Local 512, Defendants.

C. M. LATHAM, Plaintiff,

v.

CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE and The International Brotherhood of Teamsters, Local 512, Defendants.

Nos. 78–640, 79–91–Civ–J–WC.

United States District Court, M. D. Florida.

Nov. 26, 1980.

Al Millar, Jacksonville, Fla., for plaintiffs.

Michael C. Towers, Atlanta, Ga., for defendant Consolidated.

Robert L. Eshelman, Jacksonville, Fla., for defendant Union.

ORDER

CASTAGNA, District Judge.

This is an action brought by Plaintiffs under 29 U.S.C. § 185; Labor Management Relations Act, 1947, § 301. The causes were consolidated for trial and came before the Court on November 6, 1980.

Plaintiffs have sued the Defendant International Brotherhood of Teamsters, Local 512 (Union) claiming that the Union failed to fairly represent them in the processing of their grievances against Consolidated Freightways Corporation of Delaware (Consolidated). In their claim, Plaintiffs seek a

mandatory injunction and attorneys fees. Plaintiffs have also sued Defendant Consolidated Freightways of Delaware claiming that Consolidated breached the National Master Freight Agreement by "piggy-backing" freight through Florida and on which claim Plaintiffs seek back pay.

The Plaintiffs, members of Local 512, were among the fifteen over-the-road truck drivers driving for Eastern R–C Motor Freight Lines, Inc. until it ceased operations because of bankruptcy in May of 1977.

Eastern R–C's rights to operate within Florida comprised about 10% of its operation. On October 26, 1977, Consolidated purchased those rights. The remaining 90% of Eastern R–C's rights were purchased by East Texas Motor Freight Lines.

Consolidated and the Union were parties to a collective bargaining agreement known as the National Master Freight Agreement with the Southern Conference Supplement, in force April 1, 1976 through March 31, 1979.

Article 29, § 4 of that Agreement provides:

An Employer shall not use piggy-back, birdy-back, fishy-back or barge operations, etc. over the same route where he has established relay runs or through runs, except to move overflow freight. If a driver is available (which includes the one (1) hour period of time prior to end of his rest period) at point of origin when a trailer leaves the yard for the piggy-back, birdy-back, fishy-back or barge operation ramp, such driver's run-around compensation shall start from the time the trailer leaves the yard. Available regular drivers at relay points shall be protected against run-arounds if a violation occurred at point of origin.

The interpretation of this provision is the crucial issue of this litigation.

Plaintiff claims that Consolidated breached this provision by shipping freight by rail from a point of origin outside the State of Florida to a Florida destination and by shipping freight by rail from a Florida point of origin to a Northern destination.

At the time that Consolidated took over the Eastern R–C rights, it hired only the two senior employees of Eastern R–C. The Plaintiffs were not among them. Plaintiffs further contend that they were entitled to be hired by Consolidated.

Consolidated denies that it breached the National Master Freight Agreement, interpreting Paragraph 29 to entitle it to move freight by rail if a driver was not available at the point of origin to move the freight over the road. Consolidated claims that in such instances, the freight was "clean" at the point of origin and was therefore entitled to be moved by rail to its destination even though that destination was inside the State of Florida. In those instances where a driver was available at the point of origin, and the freight was shipped by rail, the freight would be considered "dirty" and the drivers at the various terminals between the point of origin and the destination would be entitled to be paid as though they had moved that freight. This, Consolidated contends, is the "clean and dirty rule."

With regard to the obligation to employ Plaintiffs at the time Consolidated took over Eastern R–C rights to operate in Florida, Consolidated claims that it was not obligated to hire Plaintiffs until there was sufficient freight to provide to the two drivers already hired, earnings of at least $275.00 per week.

The Plaintiffs, pursuant to their belief that Consolidated was violating Article 29 of the Agreement by moving freight by rail into and through Florida, filed grievances with their Union on every trailer which they believed was being piggybacked into and through Florida. Plaintiffs contend that the Union breached its duty to represent them fairly by not making full investigation of all of Plaintiffs' grievances, by not presenting all of Plaintiffs' grievances to the multistate grievance committee and not seeking evidence in company records to support Plaintiffs' grievances.

The Union, maintains that it diligently investigated and processed all of Plaintiffs' grievances which had merit and even processed some grievances of questionable valid-

ity. The Union denies that it had an obligation to present grievances which its investigation and interpretation of the contract revealed were not meritorious and asserts that it is entitled to reject grievances at the local level. Additionally, the Defendant Union asserts that the Plaintiffs failed to provide to the Union all their available information which lack of cooperation hampered the Union in its efforts to represent the Plaintiffs.

The Court makes the following findings of fact.

1. Consolidated Freightways placed the Plaintiffs in a "preferential hiring pool" to be hired as needed. Article 5 § 3(c) of the National Master Freight Agreement provided that the Union reserved the right to cut the road seniority board when the average weekly earnings fell to $275.00 a week or less. In practice, an employer would therefore not hire a driver unless there was enough work to provide a minimum of $275.00 per week to all drivers on the seniority board.

2. The Plaintiffs filed grievances on as many Consolidated Freightways trailers which they believed were being "piggybacked." The Union representative testified that the Union wanted to use these grievances to put pressure on Consolidated to hire as many former Eastern R–C drivers as possible. In fact, the Union prevailed on many of these grievances at arbitration resulting in awards of $3,061.96 for Appleby, $3,223.31 for Rogers and $731.54 for Latham. The Company, apparently inadvertently, did not raise the defense of Article 5 § 3(c) in the arbitration proceedings.

3. The Union did not take every one of the Plaintiffs' grievances to arbitration. Based on the Arbitration Committee's unfavorable disposition of some prior grievances which the Union representative diligently noted and passed on to the members in "Disposition Sheets" (Local 512's exhibits 13–23), the Union decided not to take similar grievances to arbitration.

4. Freight being shipped by railroad through Jacksonville had to be transferred from one rail station to another by means other than rail. The Union representative testified that he unsuccessfully attempted to obtain the work of over the road transport of freight from one rail station to another for the Union's city drivers by arbitration. The bill of lading (Consolidated Freightways exhibit 8) consigned freight to its destination.

5. The Union did not possess computer sheets of trailer movements. The Union representative as well as Consolidated Freightway's labor representative testified that they were unaware of the existence of such computerized information. The Union relied on "sign in/sign out" sheets required to be kept by the collective bargaining agreement and information from other Locals to investigate grievances.

The Court makes the following conclusions of law:

1. Consolidated Freightways did not have an obligation under the National Master Freight Agreement to hire the Plaintiffs in 1976 or 1977, but only to place them in a preferential hiring pool, which it did.

2. The Union's decision not to take every grievance to arbitration is a permissible exercise of Union discretion. An individual grievant has no absolute right to have his grievance arbitrated under the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967). The Union may settle the grievance short of arbitration if its decision is made in good faith, based upon an evaluation of the merits of the employee's claim and of the most advantageous expenditure of the Union's energy and resources, *see e. g., Simberlund v. Long Island Railroad*, 421 F.2d 1219 (2nd Cir. 1970).

3. The National Master Freight Agreement, Article 29 § 4 means that if freight is overflow at the point of origin or "clean," it may properly be piggybacked to its destination. This interpretation is based on the testimony concerning industry interpretation, custom and practice as well as the plain reading of the provision. The fact that the freight may have "hit the road" in Jacksonville for the purposes of changing

rail stations is insufficient to invoke the point of origin rule of Article 29 § 4.

4. The failure of the Union to inquire after the possibility of computerized information does not rise to the level of arbitrary, discriminatory or bad faith conduct by the Union. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The Court therefore finds that Plaintiffs have failed to meet their burden of showing that Local 512 did not represent the Plaintiffs fairly and further finds that Consolidated Freightways did not violate the National Master Freight Agreement. The Motions to Dismiss, under Federal Rules of Civil Procedure, Rule 41, made during the trial by Local 512 and Consolidated Freightways are, by this Order, rendered moot.

Accordingly, it is

ORDERED:

1. Judgment is to be entered for the Defendants, Consolidated Freightways Corporation of Delaware and The International Brotherhood of Teamsters, Local 512, and against the Plaintiffs, Robert L. Rogers, Raymond Appleby and C. M. Latham and the Plaintiffs shall take nothing by this action.

2. Each party to bear their own costs.